# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ROBERT MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 2:21-cv-00102-NT |
| ) | |
| NATIONAL GENERAL INSURANCE ) | |
| COMPANY and INTEGON ) | |
| NATIONAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| MAINE ATTORNEY GENERAL ) | |
| and MAINE SUPERINTENDENT ) | |
| OF INSURANCE, ) | |
| ) | |
| Intervenors. ) | |

## ORDER ON MOTIONS FOR
## JUDGMENT ON STIPULATED RECORD

Before me are the parties' motions for judgment on a stipulated record that were submitted in accordance with an Order Following Conference (ECF No. 61) issued by Judge Singal, who previously had been assigned this case. *See* Pl. Robert Martin's Mot. for J. on the Submitted Records (ECF No. 67) ("**Martin's Motion**"); Def. National General Insurance Company and Integon National Insurance Company's Mot. for J. on Final Stipulated R. (ECF No. 68) ("**NGIC's Motion**"); Joint Mot. of the Maine Attorney General and the Maine Superintendent of Insurance for J. on the Stipulated R. (ECF No. 69) ("**State's Motion**"). The central question raised

by the briefing is whether the last remaining count[1] of the First Amended Complaint—a claim for breach of contract—is timely. For the reasons set forth below, I find that the claim is timely, and I **GRANT** Martin's and the State's Motions, and I **DENY** NGIC's Motion.

## BACKGROUND

National General Insurance Company ("**NGIC**") issued a homeowners renewal insurance policy, underwritten by Integon National Insurance Company ("**Integon**"), to Robert Martin for the period January 6, 2017 through January 6, 2018. Final Statement of Stipulated Facts ("**FSSF**") (ECF No. 65) ¶ 1. On March 4, 2017, a water pipe burst at Martin's home and caused damage. FSSF ¶ 4. Martin immediately initiated a claim for coverage. FSSF ¶ 5. Over various dates in April and May of 2017, NGIC paid Martin a total of $264,361.93. FSSF ¶ 16. On March 1, 2019, Martin, through counsel, demanded additional coverage ("**Supplemental Coverage Demand**"). FSSF ¶ 17. NGIC paid some of the Supplemental Coverage Demand throughout the spring of 2019. FSSF ¶¶ 22–24. But on March 14, 2019, NGIC denied a portion of the Supplemental Coverage Demand. FSSF ¶ 21.

Martin filed suit in Maine Superior Court on March 4, 2021 for losses related to the water damage that had occurred on March 4, 2017. FSSF ¶ 6. On April 8, 2021, NGIC removed the case to this court. On June 30, 2021, NGIC filed a motion for

---

[1] Martin initially alleged three claims based on breach of contract, negligence, and a statutory claim for unfair claims settlement practices pursuant to 24-A M.R.S. § 2436-A. On January 5, 2023, Martin, NGIC, and Integon filed a joint motion to dismiss the negligence and unfair claims settlement practices claims (Counts II and III) of the Plaintiff's First Amended Complaint (ECF No. 63), which was granted (ECF No. 64).

summary judgment contending that 24-A M.R.S. § 2433, Maine's statute prohibiting foreign insurers from limiting the time for commencing actions "to a period of less than 2 years from the time when the cause of action accrues" violated the dormant commerce clause and the equal protection clause of the United States Constitution. On November 9, 2021, Judge Singal issued an order denying the motion for summary judgment and rejecting the Defendants' argument that Section 2433 violated the dormant commerce clause, but he left open the question of whether the statute violates the equal protection clause. Order on Mot. for Summary J. (ECF No. 38).

In their pending motion for judgment on the stipulated record, NGIC and Integon renew their contention that the Maine statute is unconstitutional because it violates the equal protection clause. In support of their equal protection argument, the Defendants refer to two sections of the Maine Insurance Code, 24-A M.R.S. §§ 1–7606. Section 2433 applies only to foreign insurers[2] and provides: "No conditions, stipulations or agreements in a contract of insurance shall . . . limit the time for commencing actions against [foreign] insurers to a period of less than 2 years from the time when the cause of action accrues." 24-A M.R.S. § 2433. The Defendants also point to Section 3002 of the Maine Insurance Code, which applies to all insurers that offer fire insurance for property located in Maine. Section 3002 requires such insurers to include the following clause within their policies: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . .

---

[2] Foreign insurer is defined under the Maine Insurance Code as "one formed under the laws of any jurisdiction other than this State." 24-A M.R.S. § 6. The parties agree that NGIC and Integon are "foreign insurers" within the meaning of the Maine Insurance Code. *See* FSSF ¶ 2.

3

unless commenced within two years next after inception of the loss." 24-A M.R.S. § 3002.

NGIC and Integon contend that Section 2433 treats foreign insurers less favorably than domestic insurers by running the statute of limitations period from the date the cause of action accrues rather than from the date of the loss, as is seen in Section 3002. NGIC's Mot. 5–13. According to the Defendants, this differential treatment as applied to them violates the equal protection clause of the Fourteenth Amendment. NGIC's Mot. 19. The Defendants argue that I should declare Section 2433 unconstitutional, and instead follow the policy's limitation period, which requires that any action against the insurer be brought "*within two years after the date of loss.*" Stipulated R. Ex. A (the "**Policy**") (ECF No. 18-1) at 22 (emphasis added). Because Martin failed to file his cause of action within the timeframe set by the policy, the Defendants contend that Count I is time-barred and should be dismissed. NGIC's Mot. 19.

Both Martin and the State maintain that the Defendants' argument fails because, despite the difference in language between Section 2433 and Section 3002, there is no difference under Maine law in how the statute of limitations would run on a breach of contract claim for a denial of insurance benefits. Martin's Mot. 2–8; State's Mot. 9–13. Because in fact domestic and foreign insurers are not treated differently, Martin and the State contend that the Defendants' equal protection argument is a non-starter and I should grant judgment in favor of Martin.

**ARGUMENT**

In *Palmero v. Aetna Casualty & Surety Company,* 606 A.2d 797 (Me. 1992), a case of first impression, the Law Court addressed the issue of when statutes of limitations accrue for purposes of breach of contract actions based on denial of benefits under insurance policies. Palmero was injured by an uninsured motorist in February of 1984. *Palmero*, 606 A.2d at 798. She brought a claim under her insurance policy, which Aetna denied in 1987. *Id.* In 1991, Palmero sued Aetna in Maine Superior Court for breach of contract. *Id.* The Superior Court granted summary judgment for Aetna on the ground that Palmero had filed her complaint more than six years after the injuries which gave rise to the claim.[3] *Id.* at 797–98. The Maine Law Court vacated the summary judgment, beginning its analysis with the premise that "[t]he limitations period begins to run when a cause of action accrues." *Id.* at 798 (citing *Singal v. City of Bangor*, 440 A.2d 1048, 1051 (Me. 1982)). The Law Court pointed out that "[i]t is well settled in Maine that a cause of action for breach of contract arises at the time of the breach." *Id.*[4] Seeing no reason to depart from that

---

[3] The Law Court was interpreting the general statute of limitations for civil actions, which requires that all civil actions "be commenced within 6 years after the cause of action accrues." 14 M.R.S. § 752.

[4] The Law Court distinguished two earlier cases in which it had addressed similar issues. *Palmero v. Aetna Cas. & Sur. Co.,* 606 A.2d 797, 798 (Me. 1992) (discussing *Chiapetta v. Clark Assocs.*, 521 A.2d 697 (Me. 1987) and *Kasu Corp. v. Blake, Hall & Sprague, Inc.*, 582 A.2d 978 (Me. 1990)). In *Chiapetta*, the Law Court held that the cause of action accrued when the injury (the loss of a building by fire) occurred, but it explained that the plaintiff had essentially brought a tort action against the insurance agency for failure to procure appropriate fire insurance. 521 A.2d at 698–99. The *Palmero* court pointed out that *Kasu Corp.* followed *Chiapetta* and held that the plaintiff's complaints sounding in tort for negligently procuring insurance accrued at the time the plaintiff sustains the harm, when the coverage was needed but unavailable, not later when the plaintiff discovered the absence of coverage. *Palmero*, 606 A.2d at 798 (citing *Kasu Corp.*, 582 A.2d at 980). Both of these cases follow the general rules that a cause of action accrues at the time the plaintiff sustains a judicially cognizable injury and that "a cause of action sounding in contract accrues when the contract was breached, and

5

general rule, the court held that "there is no cause of action, thus the statute of limitations does not start to run, until there is a breach of the insurance contract. That breach does not occur until the insurer refuses payment . . . ." *Id.* at 799 (citations omitted).

Both the First Circuit and this Court have followed *Palmero*. In *Down East Energy Corporation v. Niagara Fire Insurance Company*, the insurance company made some payments under its policy but ultimately denied to pay a portion of the claim. *Down East Energy Corp.*, 176 F.3d 7, 11 (1st Cir. 1999). The First Circuit, following *Palmero*, held that where the insured directly sues the insurance company for failing to cover a loss, the cause of action accrues no earlier than the insurance company's final reimbursement.[5] *Id.* at 14–15.

More recently, this Court has applied *Palmero* in the context of assessing when a cause of action accrues under 24-A M.R.S. § 3002, which, as discussed above, requires fire insurance policies to contain a provision that calls for actions to be "commenced within two years next after inception of the loss." *Chapman v. Standard Fire Ins. Co.,* No. 1:11-cv-459-DBH, 2012 WL 3644778, at *1 (D. Me. Aug. 23, 2012) (quoting 24-A M.R.S. § 3002). In *Chapman,* Judge Hornby, following *Palmero,* concluded that the plaintiff's claim for denial of benefits brought under his fire

---

a cause of action sounding in tort accrues when the plaintiff sustains harm to a protected interest." *Chiapetta*, 521 A.2d at 699 (citation omitted).

[5]    Because the suit was filed within six years of this date, the First Circuit was not required to decide whether the insurance company's final denial of coverage was a more appropriate date for purposes of accrual.

6

insurance policy accrued on the date that the insurance company notified Chapman that it was denying benefits. *Id.* at \*1.

*Chapman* is fatal to NGIC's and Integon's argument. Under the principles of accrual announced in *Palmero*, *Chapman* stands for the proposition that under Section 3002, the "inception of the loss" for purposes of a breach of contract action brought directly against an insurance company for denial of benefits under an insurance policy, refers to the date that the insurance company notifies the insured that it is refusing to pay. The claim that foreign insurers get less favorable treatment because they are subject to a longer statute of limitations period under Section 1433 therefore fails.[6] For breach of contract claims based on a denial of benefits, such as the one brought by Martin, the statute of limitations begins to run when the claim is denied—regardless of whether the action is brought under Section 1433 (which applies only to foreign insurers) or Section 3002 (which applies to all fire insurers). Because there is no disparate treatment between foreign and domestic insurers, the

---

[6] NGIC and Integon cite *L & A United Grocers, Inc. v. Safeguard Insurance Company*, 460 A.2d 587 (Me. 1983), for the proposition that the terms "inception of the loss" under Section 3002 and "accrual of the action" under Section 2433 are necessarily different. Def. NGIC and Integon's Opp'n to Pl.'s and Intervenors' Mots. for J. at 9–10 (ECF No. 71). But in *L & A United Grocers*, the Law Court expressly stated that it was not deciding "whether section 3002 differs substantially from section 2433 in its application to L & A's particular claim," noting that:

> Courts are divided on the meaning of the phrase "inception of the loss." *Compare Proc v. Home Ins. Co.,* 17 N.Y.2d 239, 217 N.E.2d 136, 270 N.Y.S.2d 412 (1966) (limitation period begins immediately on happening of the insured peril), *with Ford Motor Co. v. Lumbermens Mut. Casualty Co.*, 413 Mich. 22, 319 N.W.2d 320 (1982) (limitation period is tolled from time insured gives notice of loss until insurer formally denies liability), *and Fireman's Fund Ins. Co. v. Sand Lake Lounge*, 514 P.2d 223 (Alaska 1973) (limitation period in standard fire policy begins to run from date cause of action accrues).

*Id.* 589–90 n.7. Regardless, *L & A Grocers* predates *Palmero* which, as discussed above, decided that a breach of contract action against an insurer for failing to pay benefits accrues not at the time of the injury but rather when benefits are denied.

7

Defendants' claim that Section 1433 violates the equal protection clause of the Fourteenth Amendment fails out of the gate.

"NGIC has stipulated to judgment on Count I (breach of contract) if 24-A M.R.S. § 2433 expands the suit limitation period set forth in the Policy." Def. NGIC and Integon's Opp'n to Pl.'s and Intervenors' Mots. for J. at 9 (ECF No. 71). Because I conclude that Section 2433 does expand the suit limitation period set forth in the Policy, making Martin's action timely, judgment on Count I should enter in favor of Martin.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Martin's motion for judgment (ECF No. 67) and the State's motion for judgment (ECF No. 69) and **DENIES** the Defendants' motion for judgment (ECF No. 68). Judgment will be entered in favor of Martin on Count I. The parties are directed to submit a proposed final judgment that sets forth the disposition of all claims in the case by January 19, 2024.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 5th day of January, 2024.